| | |
|---|---|
| 1 | James M. Dowd (SBN 211280) |
| | *james.dowd@wilmerhale.com* |
| 2 | Derek A. Gosma (SBN 274515) |
| | *derek.gosma@wilmerhale.com* |
| 3 | **WILMER CUTLER PICKERING** |
| | **HALE AND DORR LLP** |
| 4 | 350 South Grand Avenue, Suite 2400 |
| | Los Angeles, CA 90071 |
| 5 | Tel: +1 213 443 5300 |
| 6 | Joseph F. Haag (SBN 248749) |
| | *joseph.haag@wilmerhale.com* |
| 7 | **WILMER CUTLER PICKERING** |
| | **HALE AND DORR LLP** |
| 8 | 2600 El Camino Real, Suite 400 |
| | Palo Alto, CA 94306 |
| 9 | Tel: +1 650 858 6000 |
| 10 | Kate Saxton (*Pro Hac Vice Application Pending*) |
| | *Kate.Saxton@wilmerhale.com* |
| 11 | George F. Manley (*Pro Hac Vice Application Pending*) |
| | *George.Manley@wilmerhale.com* |
| 12 | **WILMER CUTLER PICKERING** |
| | **HALE AND DORR LLP** |
| 13 | 60 State Street |
| | Boston, MA 02109 |
| 14 | Tel: +1 617 526 6000 |
| 15 | *Attorneys for Plaintiffs Skyworks Solutions Canada, Inc. and Skyworks Global Pte Ltd* |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| SKYWORKS SOLUTIONS CANADA, INC. AND SKYWORKS GLOBAL PTE LTD., <br><br> Plaintiffs, <br><br> v. <br><br> KANGXI COMMUNICATION TECHNOLOGIES (SHANGHAI) CO., LTD., AND GRAND CHIP LABS, INC., <br><br> Defendants. | **CASE NUMBER:** 8:24-cv-00976 <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** |

# NATURE OF THE ACTION

1. Plaintiffs Skyworks Solutions Canada, Inc. ("Skyworks Canada") and Skyworks Global Pte Ltd. ("Skyworks Global") bring this Complaint in the Central District of California (the "District") against Defendants Kangxi Communication Technologies (Shanghai) Co., Ltd., ("KXComTech") and Grand Chip Labs, Inc. ("GCLI") (collectively, "KCT" or the "KCT Defendants") for infringement of United States Patent No. 7,409,200 (the "'200 patent").

# THE PARTIES

### A. Skyworks

2. Skyworks Canada is a Canadian Corporation with its principal place of business at 1135 Innovation Dr., Kanata, ON K2K 3G7. Skyworks Canada is a wholly-owned subsidiary of Skyworks Luxembourg S.a.r.l. ("Skyworks Luxembourg"), a Corporation based in Luxembourg with a principal place of business at 2-8, avenue Charles De Gaulle, L-1653 Luxembourg. Skyworks Luxembourg is, in turn, a wholly-owned subsidiary of Skyworks Solutions, Inc., a California Corporation with a principal place of business at 5260 California Avenue, Irvine, California 92617. Skyworks Canada was formed after a transaction in which Skyworks Solutions, Inc. acquired the Canadian semiconductor company, SiGe Semiconductor, Inc. ("SiGe"), which later formally changed its name to "Skyworks Solutions Canada, Inc." (Ex. 1 [Certificate of Amendment].)

3. Skyworks Global is a Singaporean Corporation with its principal place of business at 3 Bedok South Rd, Singapore. Skyworks Global is also a wholly-owned subsidiary of Skyworks Luxembourg, which as explained above is a wholly-owned subsidiary of Skyworks Solutions, Inc.

4. Skyworks is renowned in the wireless semiconductor industry for its innovative approach to radio frequency and semiconductor system design. It is a worldwide leader in the Wi-Fi front-end-module (FEM) industry based in part on the success of its strong and long-standing investments in research and development

right here in California and throughout the United States. Wi-Fi is a family of wireless network protocols based on the Institute of Electrical and Electronics Engineers (IEEE) 802.11 series of standards. Skyworks provides innovative Wi-Fi FEM chips that are used in a wide array of products that play critical roles in the U.S. economy, including in enabling reliable Wi-Fi connectivity for the network of wireless devices that power today's economy and infrastructure.

5.  Skyworks' technology enables everything from daily essentials like smartphones, computers, and Internet of Things (IoT) devices to societal necessities like lifesaving patient telemetry in hospitals, advanced security systems, and industrial automation. Skyworks' technology also serves the aerospace and national defense sectors, among others.

6.  As one of the largest producers of Wi-Fi FEMs in the world (Ex. 2 [Mordor Intelligence Report] at 4), Skyworks is committed to developing innovative solutions to meet the ever-evolving demands for wireless communication across many industries. To that end, Skyworks spent more than $600 million on research and development in 2022 alone, for example, and it has been awarded more than 4,600 patents worldwide in recognition of its pioneering innovations. (Skyworks Solutions, Inc., *2022 Annual Report*, [https://perma.cc/LU9D-7TBQ] at 83, 88.)

7.  Skyworks employs thousands of scientists, engineers, and other personnel in the United States, including at its numerous facilities right here in California.

**B.    The KCT Defendants**

8.  Defendant KXComTech is a corporation organized under the laws of the People's Republic of China ("PRC"), with its principal place of business located at 5th Floor, Building 10, No.399 Keyuan Road, Pudong New Area, Shanghai, PRC.

9.  Established in 2014, KXComTech offers Wi-Fi FEM products compliant with the Wi-Fi 6, 6E, and 7 protocols, among others. According to its website, KXComTech was "founded by seasoned experts with global experience[]

2

in the field of RF chip design, application, production, and sales" and operates with a mission to "provide wireless devices with faster speed, lower latency, higher capacity and wider coverage for more complex and diversified network access scenarios."  (KXComTech, *About Us*, [https://perma.cc/ST82-V7TA].)  KXComTech has stated publicly that "most of [its] R&D teams" have "overseas work experience" at American semiconductor companies, like Skyworks.  (Ex. 3 [KCT Press Release] ("Most of the R&D teams … have overseas work experience in RFaxis (acquired by Skyworks in 2016), RFMD (merged into Qorvo), Anadigics and other internationally renowned RF front-end chip companies[.]").)

10. KXComTech purports to work with distributors to sell its products in the United States, China, and Taiwan.  (KXComTech, *Distributors*, [https://perma.cc/39JG-J7Y6].)  It also sells its products directly in all three markets.  (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ].)

11. On November 17, 2023, KXComTech was officially listed on the Shanghai Stock Exchange's Science and Technology Innovation Board.  (KXComTech, *IPO Press Release*, [https://perma.cc/6D7X-VUU6].)  According to its public offering filings, KXComTech employs 156 people, has a market capitalization of $1.24 billion, and an enterprise value of $1.16 billion.

12. GCLI is a corporation organized under Nevada law and domiciled in California with a principal place of business at 14151 Newport Ave., Suite 204, Tustin, CA 92780.  (Ex. 4 [GCLI California Corporation Registration]).  GCLI is a wholly owned subsidiary of KXComTech.  (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ].)

13. On information and belief, GCLI is directly controlled by KXComTech and handles business development for and sales of KXComTech Wi-Fi FEM products in the United States.

14. KCT has recently announced its intent to attempt to displace Skyworks in the market for Wi-Fi FEM chips.  (Wi-Fi Now, *Meet KXcomtech: On track to ship*

3

*hundreds of millions in Wi-Fi FEMs in 2022*, [https://perma.cc/R3R7-5B47].) For instance, KCT advertises its products as being pin-to-pin compatible with Skyworks' products (*see, e.g.*, Ex. 5 [KCT Product Roadmap Presentation] at 8-24), and has publicly compared its products to Skyworks' products "in terms of linearity, efficiency, noise figure, and other performance metrics" (KXComTech, *IPO Press Release*, [https://perma.cc/6D7X-VUU6]). KCT chose to locate its United States sales and marketing entity, GCLI, less than ten miles from Skyworks' corporate headquarters. Moreover, KCT has intentionally targeted and continues to target Skyworks' customers in an attempt to convince them to switch to purchasing Wi-Fi FEMs from KCT, and to incorporate those KCT FEMs into their Wi-Fi enabled products. KCT has engaged in this conduct despite knowledge of Skyworks' patent portfolio generally and the '200 patent in particular. On information and belief, the Wi-Fi FEMs that KCT offers for sale to Skyworks' customers copy Skyworks' technology, including the technology covered by the '200 patent.

## JURISDICTION AND VENUE

15. This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

### A. KXComTech

17. KXComTech is subject to this Court's specific and general personal jurisdiction due at least to its substantial business in this State and District, including by regularly doing or soliciting business, engaging in other persistent conduct targeting residents of California and this District, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported vicariously through and/or in concert with its related entities, alter egos, intermediaries, agents, distributors, partners, subsidiaries, clients, customers, affiliates, and/or consumers.

18. For instance, GCLI is responsible for selling KXComTech's products to customers in the United States and for developing KXComTech's business in U.S. markets. GCLI is 100% owned by KXComTech (Wi-Fi Now, *David L. Recker*, [https://perma.cc/AJT7-MDWU] (identifying GCLI as a "[w]holly owned US subsidiary of KXcomtech")), and KXComTech's chairman, Dr. Ping Peng, is GCLI's corporate president, treasurer, and sole director (Ex. 6 [Grand Chip Labs, Inc. Corporate Registration]). GCLI is registered to do business in California and maintains its principal place of business in this District located at 14151 Newport Ave., Suite 204, Tustin. (Ex. 4 [GCLI California Corporation Registration].)

19. On information and belief, KXComTech also directs and authorizes the sale and distribution of infringing products in California, including in this District. For instance, KXComTech's website lists an individual employed by GCLI as its General Representative of North America for sales. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ].) Further, KXComTech's website lists Disman Bakner as its United States distributor for the California market. (KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].) On information and belief, KXComTech directs and authorizes both GCLI and Disman Bakner to distribute infringing products in California.

20. Venue is proper in this District as to KXComTech because it is a foreign corporation organized under the laws of the People's Republic of China, with a principal place of business in Shanghai, China. Because KXComTech is not a resident of the United States, it may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

B. **GLCI**

21. This Court has personal jurisdiction over GCLI because it is domiciled in California and lists its principal place of business in California. (Ex. 4 [GCLI California Corporation Registration].)

22. This Court also has personal jurisdiction over GCLI because it regularly transacts business in this District by, among other things, offering infringing products to customers, business affiliates, and partners located in the District. For instance, an individual employed by GCLI is listed on KXComTech's website as KXComTech's General Representative of North America for sales. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ].)

23. Venue is proper in this District as to GCLI pursuant to at least 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), 1391(c)(2), 1391(d), and 1400(b) because GCLI is subject to personal jurisdiction in this District, has a regular and established place of business in this District, and has committed acts of infringement in this District. For example, GCLI lists its principal place of business as 14151 Newport Ave., Suite 204, Tustin, CA 92780, which is located in this District less than five miles from the Ronald Reagan Federal Building and United States Courthouse. (Ex. 4 [GCLI California Corporation Registration].)

## FACTUAL BACKGROUND

### A. Technology Background

24. The '200 patent relates to an innovative technology for improving the performance and design of FEMs, including Wi-Fi FEMs.

25. Skyworks has been at the forefront of advancing wireless connectivity technologies, and its commitment to innovation can be seen across all of its business segments, including its Wi-Fi FEM product offerings.

26. Wi-Fi FEMs are integrated circuits contained in wireless routers (and many other devices) that enable wireless communication with a user device (*e.g.*, a computer or smartphone) so that the user device can transmit and receive information with other systems, such as via the internet. Wi-Fi FEMs are typically located between the wireless router's antenna and its transceiver and are generally comprised of semiconductor components, including but not limited to, power amplifiers, low noise amplifiers, and switches.

27. When a user device accesses the internet, it sends signals requesting data and receives the data in response. When a user device uses Wi-Fi to request access to the internet, it sends a wireless signal to the wireless router. The wireless router processes the signal and passes it to the internet. When the internet responds, the wireless router processes the response, determines which user device to send the response to (if there are multiple user devices connected to the wireless router), and wirelessly sends the response to the appropriate user device.

28. Proper wireless communication between a user device and a wireless router requires transmission of strong and clear wireless signals. However, myriad external factors can weaken or warp the signal during transmission. As a result, signals received by a wireless router often need to be adjusted so that they can reach their intended destination in a discernable fashion. This signal adjustment is typically performed by the wireless router's Wi-Fi FEM. In addition, a wireless router uses its Wi-Fi FEM to amplify signals for transmission.

29. For example, during the transmission of a wireless signal from the wireless router to a user device, outside noise sources may disrupt the transmitted signal. This disruption is commonly referred to as "interference," and it can decrease the strength and quality of the signal sent from the wireless router to the user device. To prevent this, the wireless router sends the signal from its transceiver to the Wi-Fi FEM for adjustment for wireless transmission. The Wi-Fi FEM uses power amplifiers to strengthen the signal without distorting it. This reduces the impact of any interference the signal might experience during transmission so that a strong and clear signal can be received by the user device.

30. Further, when the wireless router receives a signal from the user device, factors such as the distance between the wireless router and the user device can reduce the signal strength. To account for this, the wireless router uses the Wi-Fi FEM for adjustment of the received wireless signal. The Wi-Fi FEM can use its low-noise amplifier to both amplify the strength of the signal and isolate the signal

from interference. This ensures that the signal received by the wireless router is strong enough for the wireless router to properly process and route.

31. The '200 patent reflects Skyworks' many years of dedication, expertise, and investment in research and development related to Wi-Fi FEMs. Designing Wi-Fi FEM chips that can keep pace with new wireless networking capabilities has posed significant challenges for Wi-Fi FEM producers—especially given the increasing need for smaller and more efficient chips. The technology of the '200 patent addresses these challenges by enhancing Wi-Fi FEM performance in a power-efficient manner through use of improved circuitry.

**B.    The '200 Patent[1]**

32.    30.    As set forth below, KCT has been and is still infringing the '200 patent by making, using, offering for sale, selling, or importing RF FEMs that practice the '200 patent, or by contributing to infringement or inducing others to infringe. KCT's acts of infringement have occurred within this District and elsewhere throughout the United States.

33. The '200 patent, entitled "Module integration integrated circuits," was assigned to SiGe on June 2, 2004 (Ex. 7 [Assignment]), was duly and legally issued on August 5, 2008, and has been in full force and effect since its issuance. A true and correct copy of the '200 patent is attached hereto as Exhibit 8.

34. Skyworks acquired SiGe on May 17, 2011 and, on August 1, 2011, SiGe executed a patent license agreement granting an exclusive license to the '200 patent (among others) to Skyworks Global. On June 23, 2016, SiGe formally

---

[1] All non-technical descriptions of the '200 patent included in this Complaint are presented to give a general background to the patent. Statements made in connection with these non-technical descriptions are not intended nor should they be used for purposes of patent claim construction. Skyworks presents these statements subject to and without waiver of its right to argue that claim terms should be construed in a particular way under claim interpretation jurisprudence and the relevant evidence.

8

changed its corporate name to plaintiff Skyworks Solutions Canada, Inc. (Ex. 1 [Certificate of Amendment].) As a result, Skyworks Global and Skyworks Canada own all substantial rights to the '200 patent, including the right to enforce the patent and seek all legal and equitable remedies for infringement thereof.

35. The '200 patent relates generally to the design of RF front-end circuits. (Ex. 8 ['200 patent] at 1:9-11.)

36. The '200 patent describes an RF module with RF components located on two dies. (*Id*. at 4:28-38, 7:32-50). A first portion of a first signal conditioning circuit is integrated within the first integrated circuit die and is disposed along a first signal path. A second portion of the first signal conditioning circuit is integrated within the second integrated circuit die and is disposed along the first signal path for performing a first signal conditioning function along with the first portion of a first signal conditioning circuit for a signal propagating along the first signal path. (*Id*. at 7:32-50, claim 1.)

37. As set forth below, KCT's Wi-Fi FEMs infringe the '200 patent.

**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,409,200**

38. Skyworks re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint, as if fully set forth herein.

39. The '200 patent is valid and enforceable under the United States Patent Laws.

40. In violation of 35 U.S.C. § 271, KCT has been and is still infringing, directly or indirectly, literally or under the doctrine of equivalents, the '200 patent by making, using, offering for sale, selling, or importing infringing Wi-Fi 6, 6E, and

7 FEMs, including, but not limited to, the KCT8547HE, KCT8539S, KCT8239S, and KCT8576HE Wi-Fi FEMs (the "Accused KCT Products").[2]

41. The Accused KCT Products infringe at least claims 1, 2, 6, 10-12, 15, 18, 19, 20, and 23-25 of the '200 patent, including because the Accused KCT Products are manufactured using a process that infringes the '200 patent and because the Accused KCT Products, on information and belief, are neither materially changed by a subsequent process nor rendered trivial and nonessential components of another product.

42. For instance, the Accused KCT Products infringe independent claims 1 and 18 of the '200 patent for at least the reasons described in Skyworks' exemplary infringement charts set forth as Exhibits 9-12.

43. With respect to claim 2, the Accused KCT Products further contain a second signal conditioning circuit on the low noise amplifier die including a plurality of circuitry including, but not limited to, a low noise amplifier and switch circuits through which a signal passes to make a received signal suitable for further processing. The first portion of the second signal conditioning circuit includes a switch that can be appropriately set to allow reception of an incoming signal. The second portion of the second signal conditioning circuit has a low noise amplifier and low noise amplifier bypass path. The signal path of the second signal conditioning circuit is different from the signal path of the first signal conditioning circuit. Thus, the Accused KCT Products infringe claim 2 of the '200 patent.

44. With respect to claim 6, the Accused KCT Products further contain a first signal conditioning circuit that includes a plurality of circuitry including, but not limited to, power amplifier circuitry and switch circuitry through which a signal

---

[2] Skyworks' infringement allegations regarding the '200 patent extend to all KCT Wi-Fi FEMs embodying an infringing RF Module, including KCT Wi-Fi 6, 6E, and 7 FEMs.

passes to make it suitable for transmission. The first portion of the first signal conditioning circuit includes power amplifier circuitry for amplifying an input signal before transmission. Thus, the Accused KCT Products infringe claim 6 of the '200 patent.

45. With respect to claim 10, the Accused KCT Products further contain a power amplifier die manufactured by a process that is different from the process used to manufacture the low noise amplifier die such that the circuitry associated with signal conditioning on the low noise amplifier die would not be suitable for manufacturing and integration onto the power amplifier die. Thus, the Accused KCT Products infringe claim 10 of the '200 patent.

46. With respect to claim 11, the Accused KCT Products further contain a low noise amplifier die that is manufactured using a different set of semiconductor processing steps compared to the power amplifier die. Thus, the Accused KCT Products infringe claim 11 of the '200 patent.

47. With respect to claim 12, the Accused KCT Products further contain a power amplifier die that is made from a semiconductor wafer comprising GaAs. Thus, the Accused KCT Products infringe claim 12 of the '200 patent.

48. With respect to claim 15, the Accused KCT Products further contain a first signal conditioning circuit that includes a plurality of circuitry including, but not limited to, power amplifier circuitry and switch circuitry through which a signal passes to make it suitable for transmission. The second portion of the first signal conditioning circuit has at least one of a capacitor and an inductor. Thus, the Accused KCT Products infringe claim 15 of the '200 patent.

49. With respect to claim 19, the Accused KCT Products further contain a first portion of a first signal path on the power amplifier die and a second portion of the first signal path on the low noise amplifier die. The signal path is located between an input to the power amplifier die and an output of the low noise amplifier die. Thus, the Accused KCT Products infringe claim 19 of the '200 patent.

50. With respect to claim 20, the Accused KCT Products further contain a second signal path located on the low noise amplifier die that is different from the second portion of the first signal path which is also located on the low noise amplifier die, providing approximate RF isolation. The circuitry along the second signal path extends from the antenna node to the receive node and includes switch circuitry to allow reception of an incoming signal as well as a low noise amplifier path and low noise amplifier bypass path. The circuitry along the second portion of the first signal path extends from the input to the low noise amplifier die to the antenna node and includes switch circuitry that allows the signal to be transmitted through the antenna when the switch circuit is appropriately set. Thus, the Accused KCT Products infringe claim 20 of the '200 patent.

51. With respect to claim 23, the Accused KCT Products further contain a power amplifier die manufactured by a semiconductor process that is different from the semiconductor process used to manufacture the low noise amplifier die such that the circuitry associated with second portion of the first signal conditioning on the low noise amplifier die would not facilitate its implementation in the power amplifier die. Thus, the Accused KCT Products infringe claim 23 of the '200 patent.

52. With respect to claim 24, the Accused KCT Products each implement the second portion of the first signal conditioning circuit in the low noise amplifier die for improved performance over implementing the second portion of the first signal conditioning circuit in the power amplifier die. The low noise amplifier die includes a second portion of a first signal conditioning circuit having switch circuitry that allows the signal to be transmitted through the antenna when the switch circuit is appropriately set. Implementing this signal conditioning circuit in the low noise amplifier die yields better performance than implementing it in the power amplifier die due to the differences in the semiconductor processing used to manufacture the two dies. Thus, the Accused KCT Products infringe claim 24 of the '200 patent.

53. With respect to claim 25, the Accused KCT Products further contain a first signal conditioning circuit partitioned into a first portion and a second portion. The first portion includes power amplifier circuitry for amplifying an input signal before transmission, and the second portion includes switch circuitry that allows the signal to be transmitted through the antenna when the switch circuit is appropriately set. Thus, the Accused KCT Products infringe claim 25 of the '200 patent.

54. KCT has had knowledge of the '200 patent at least since March 7, 2023, when Skyworks sent a letter to KCT's President informing KCT that its 2.4 GHz and 5 GHz Wi-Fi FEMs infringed the claims of certain Skyworks patents, including (but not limited to) the '200 patent. (Ex. 13 [2023 Notice Letter] at 1-2.) Skyworks met with KCT and gave a presentation outlining KCT's infringement. Skyworks additionally sent a letter to KCT on April 23, 2024, providing further notice of KCT's infringement of the '200 patent. (Ex. 14 [2024 KCT Notice Letter].) Despite receiving notice of its infringement, KCT has continued to infringe Skyworks' patented technology, including the technology claimed in the '200 patent, and made no effort to avoid infringement. These actions demonstrate KCT's willful, blatant, and egregious disregard for Skyworks' patent rights.

55. On information and belief, KCT actively, knowingly, and intentionally has induced and continues to induce infringement of the '200 patent by, for example, controlling the design and manufacture of, offering for sale, selling, supplying, and otherwise providing instruction and guidance regarding the Accused KCT Products, with the knowledge and specific intent to encourage and facilitate acts of direct infringement with respect to such products, including by resellers, retailers, end product manufacturers, and end users of the Accused KCT Products, both inside and outside the United States. For example, KCT's website advertises the Accused KCT Products as integrating "a high-efficiency high-linearity power amplifier (PA)" that includes a "power detector" for "accurately monitoring [] output power from the [power amplifier]." (KXComTech, *KCT8547HE-1*, [https://perma.cc/7QFB-

L3FW]; KXComTech, *KCT8539S*, [https://perma.cc/WRA7-GDPD]; KXComTech, *KCT8576HE*, [https://perma.cc/A72U-RFMF]; *see also* KXComTech, *KCT8239S*, [https://perma.cc/NS2E-VPYU] (describing the KCT8239S product as "a fully integrated 802.11b/g/n/ac/ax WLAN RF Front-end module (FEM) which incorporates key RF functionality," which is "integrated with a high-efficiency power amplifier (PA), a low noise amplifier (LNA) with bypass, the associated matching network and a single-pole, double-throw (SPDT) switch all in one device").) Further, KCT advertises the Accused KCT Products as being pin-to-pin compatible with Skyworks' products. For instance, KCT's product roadmap presentation published in the second quarter of 2023 indicated that the accused KCT8576HE product is pin-to-pin compatible with Skyworks' SKY85746-11 product. (Ex. 5 [KCT Product Roadmap Presentation] at 15.) On information and belief, KCT sells and distributes infringing products to customers in the United States both directly and through third-party distributors like Disman Bakman. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ]; KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].) On information and belief, KCT's distributors, customers, and end users directly infringe the '200 patent by, for example, making, using, offering to sell, and selling within the United States, and/or importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

56. KCT also contributes to infringement of the '200 patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Accused KCT Products, which are not suitable for substantial non-infringing use and which embody a material part of the invention described in the '200 patent. These Accused KCT Products are known by KCT to be especially made or especially adapted for use in the infringement of the '200 patent. Specifically, on information and belief, KCT sells the Accused KCT Products to resellers, retailers, and end product manufacturers with knowledge that

such entities perform acts of direct infringement with the Accused KCT Products. On information and belief, KCT sells and distributes infringing products to customers in the United States both directly and through third-party distributors like Disman Bakman. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ]; KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].) On information and belief, KCT's distributors, customers, and end users directly infringe the '200 patent by, for example, making, using, offering to sell, selling within the United States, and/or importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

57. As a result of KCT's infringement of the '200 patent, Skyworks has been damaged. Skyworks is entitled to recover for damages sustained as a result of KCT's wrongful acts in an amount to be proven at trial, and in no event less than a reasonable royalty for the use made of the invention by KCT, together with interest and costs as fixed by the Court.

58. In addition, KCT's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

59. On information and belief, KCT's infringement of the '200 patent has been and continues to be willful. For the reasons stated above, KCT has had knowledge of the '200 patent and its infringement of the '200 patent since at least March 7, 2023. Nevertheless, KCT has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Skyworks' patent rights. Thus, KCT's infringing actions have been and continue to be consciously willful.

60. Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because of KCT's copying of the '200 patent in the Accused KCT Products—which warrants an award of attorneys' fees to Skyworks pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

61. WHEREFORE, Skyworks respectfully requests that this Court enter judgment in its favor as follows and award Skyworks the following relief:

a) A judgment that KCT has infringed at least one or more claims of the '200 patent, directly and/or indirectly, literally and/or under the doctrine of equivalents;

b) An award of damages sufficient to compensate Skyworks for KCT's infringement under 35 U.S.C. § 284;

c) An adjudication that KCT's infringement has been willful and deliberate, and an award to Skyworks of treble damages and pre-judgment interest under 35 U.S.C. § 284;

d) An adjudication that this case is exceptional under 35 U.S.C. § 285, and an award to Skyworks of its reasonable attorneys' fees;

e) An award to Skyworks of its costs and expenses in this action;

f) A permanent injunction restraining and enjoining KCT and its officers, directors, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated or related companies, attorneys, and all others in active concert or participation with any of the foregoing, from directly or indirectly infringing the '200 patent;

g) Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38-1 of this Court, Skyworks hereby demands a trial by jury as to all issues so triable.

| | | |
|---|---|---|
| 1 | Dated: May 6, 2024 | Respectfully Submitted, |
| 2 | | |
| 3 | | **SKYWORKS SOLUTIONS CANADA INC. AND SKYWORKS GLOBAL PTE LTD.** |
| 4 | | |
| 5 | | By: */s/ James M. Dowd* |
| 6 | | James M. Dowd (SBN 211280) |
| | | james.dowd@wilmerhale.com |
| 7 | | Derek A. Gosma (SBN 274515) |
| | | derek.gosma@wilmerhale.com |
| 8 | | **WILMER CUTLER PICKERING HALE AND DORR LLP** |
| 9 | | 350 South Grand Avenue, Suite 2400 |
| | | Los Angeles, CA 90071 |
| 10 | | Tel: +1 213 443 5300 |
| 11 | | Joseph F. Haag (SBN 248749) |
| | | joseph.haag@wilmerhale.com |
| 12 | | **WILMER CUTLER PICKERING HALE AND DORR LLP** |
| 13 | | 2600 El Camino Real, Suite 400 |
| | | Palo Alto, CA 94306 |
| 14 | | Tel: +1 650 858 6000 |
| 15 | | Kate Saxton (*Pro Hac Vice Application Pending*) |
| | | Kate.Saxton@wilmerhale.com |
| 16 | | George F. Manley (*Pro Hac Vice Application Pending*) |
| 17 | | George.Manley@wilmerhale.com |
| 18 | | **WILMER CUTLER PICKERING HALE AND DORR LLP** |
| | | 60 State Street |
| 19 | | Boston, MA 02109 |
| | | Tel: +1 617 526 6000 |
| 20 | | |
| 21 | | *Attorneys for Plaintiffs Skyworks Solutions Canada, Inc. and Skyworks Global Pte Ltd.* |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |