James M. Dowd (SBN 211280)
*james.dowd@wilmerhale.com*
Derek A. Gosma (SBN 274515)
*derek.gosma@wilmerhale.com*
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Tel: +1 213 443 5300

Joseph F. Haag (SBN 248749)
*joseph.haag@wilmerhale.com*
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: +1 650 858 6000

Kate Saxton (*Admitted Pro Hac Vice*)
*Kate.Saxton@wilmerhale.com*
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Tel: +1 617 526 6000

*Attorneys for Plaintiffs Skyworks Solutions Canada, Inc. and Skyworks Global Pte Ltd.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| SKYWORKS SOLUTIONS CANADA, INC. AND SKYWORKS GLOBAL PTE LTD. <br> Plaintiffs, <br><br> v. <br><br> KANGXI COMMUNICATION TECHNOLOGIES (SHANGHAI) CO., LTD., GRAND CHIP LABS, INC., D-LINK CORPORATION, D-LINK SYSTEMS, INC., AND RUIJIE NETWORKS CO., LTD. <br><br> Defendants. | **CASE NUMBER: 8:24-CV-00976-FWS-ADS** <br><br> **FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** |

## NATURE OF THE ACTION

1.      Plaintiffs Skyworks Solutions Canada, Inc. ("Skyworks Canada") and Skyworks Global Pte Ltd. ("Skyworks Global") (collectively, "Skyworks") bring this First Amended Complaint for Patent Infringement in the Central District of California (the "District") against Defendants Kangxi Communication Technologies (Shanghai) Co., Ltd., ("KXComTech") and Grand Chip Labs, Inc. ("GCLI") (collectively, "KCT" or the "KCT Defendants"); D-Link Corporation and D-Link Systems, Inc. (collectively, "D-Link" or the "D-Link Defendants"); and Ruijie Networks Co. Ltd. ("Ruijie") for infringement of United States Patent No. 7,409,200 (the "'200 patent").

## THE PARTIES

### A.    Skyworks

2.      Skyworks Canada is a Canadian Corporation with its principal place of business at 1135 Innovation Dr., Ontario, ON K2K 3G7, Canada.  Skyworks Canada is a wholly-owned subsidiary of Skyworks Luxembourg S.a.r.l ("Skyworks Luxembourg"), a Corporation based in Luxembourg with a principal place of business at 2-8, avenue Charles De Gaulle, L-1653 Luxembourg.   Skyworks Luxembourg is a wholly-owned subsidiary of Skyworks Solutions, Inc., a Delaware Corporation with a principal place of business at 5260 California Avenue, Irvine, California 92617.  Skyworks Canada was formed after a transaction in which Skyworks Solutions, Inc. acquired the Canadian semiconductor company, SiGe Semiconductor, Inc. ("SiGe"), which later formally changed its name to "Skyworks Solutions Canada, Inc." (Dkt. 1-1 [Certificate of Amendment].)

3.      Skyworks Global is a Singaporean Corporation with its principal place of business at 3 Bedok South Rd, Singapore.  Skyworks Global is also a wholly-owned subsidiary of Skyworks Luxembourg, which is a wholly-owned subsidiary of Skyworks Solutions, Inc.

4.    Skyworks is renowned in the wireless semiconductor industry for its innovative approach to radio frequency and semiconductor system design.  It is a worldwide leader in the wireless front-end-module ("FEM") industry based in part on the success of its strong and long-standing investments in research and development right here in California and throughout the United States.  As discussed further below, a wireless system's FEM is typically located adjacent to the system's antenna and comprises, for example, radio frequency signal conditioning elements that operate in the analog domain, such as amplification, switching, and/or filtering elements.  Skyworks provides innovative wireless FEM chips that are used in a wide array of products that play critical roles in the U.S. economy, including in enabling reliable connectivity for the network of wireless devices that power today's economy and infrastructure.

5.    Skyworks' technology enables everything from daily essentials like smartphones, computers, and Internet of Things (IoT) devices to societal necessities like lifesaving patient telemetry in hospitals, advanced security systems, and industrial automation.  Skyworks' technology also serves the aerospace and national defense sectors, among others.

6.    As one of the largest producers of wireless FEMs in the world (Dkt. 1-2 [Mordor Intelligence Report] at 4), Skyworks is committed to developing innovative solutions to meet the ever-evolving demands for wireless communication across many industries.  To that end, Skyworks spent more than $606 million on research and development in 2023 alone, for example, and it has been awarded more than 4,600 patents worldwide in recognition of its pioneering innovations. (Skyworks Solutions, Inc., *2023 Annual Report*, [https://perma.cc/Y23Q-J8TG] at 140.)

7.    Skyworks employs thousands of scientists, engineers, and other personnel in the United States, including at its numerous facilities right here in California.

**B.** **The KCT Defendants**

8.    Defendant KXComTech is a corporation organized under the laws of China, with its principal place of business located at 5th Floor, Building 10, No.399 Keyuan Road, Pudong New Area, Shanghai, China.

9.    Established in 2014, KXComTech offers multiple wireless FEM products that infringe the '200 Patent, including products compatible with at least the sixth generation (802.11ax or "Wi-Fi 6"), sixth generation extended ("Wi-Fi 6E"),[1] or the seventh generation (802.11b3 or "Wi-Fi 7") protocols, among others.[2] According to its website, KXComTech was "founded by seasoned experts with global experience[] in the field of RF chip design, application, production, and sales" and operates with a mission to "provide wireless devices with faster speed, lower latency, higher capacity and wider coverage for more complex and diversified network access scenarios." (KXComTech, *About Us*, [https://perma.cc/ST82-V7TA].)  KXComTech has stated publicly that "most of [its] R&D teams" have "overseas work experience" at American semiconductor companies, like Skyworks. (Dkt. 1-3 [KCT Press Release] ("Most of the R&D teams … have overseas work experience in RFaxis (acquired by Skyworks in 2016), RFMD (merged into Qorvo), Anadigics and other internationally renowned RF front-end chip companies[.]").)

10.    KXComTech purports to work with distributors to sell its products in the United States, China, and Taiwan. (KXComTech, *Distributors*, [https://perma.cc/39JG-J7Y6].)  It also sells its products directly in all three markets. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ].)

---

[1] WI-Fi 6E expanded on the pre-existing Wi-Fi 6 standard by enabling access to a 6 GHz band.

[2] Although KCT markets its accused wireless FEM products as compatible with certain standards (like Wi-Fi 6, 6E, and 7), Skyworks' Asserted Patents have not been declared standards-essential and are not subject to any FRAND obligations.

11. On November 17, 2023, KXComTech was officially listed on the Shanghai Stock Exchange's Science and Technology Innovation Board. (KXComTech, *IPO Press Release*, [https://perma.cc/6D7X-VUU6].)  According to its public offering filings, KXComTech employs 156 people, has a market capitalization of $1.24 billion, and an enterprise value of $1.16 billion.

12. GCLI is a corporation organized under Nevada law and domiciled in California with a principal place of business at 14151 Newport Ave., Suite 204, Tustin, CA 92780. (Dkt. 1-4 [GCLI California Corporation Registration]).  GCLI is a wholly owned subsidiary of KXComTech.  (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ].)

13. On information and belief, GCLI is directly controlled by KXComTech and handles business development for and sales of KXComTech wireless FEM products in the United States.

14. KCT has recently announced its intent to attempt to displace Skyworks in the market for wireless FEM chips. (Wi-Fi Now, *Meet KXcomtech: On track to ship hundreds of millions in Wi-Fi FEMs in 2022*, [https://perma.cc/R3R7-5B47].) For instance, KCT has marketed its products as pin-for-pin replacements for Skyworks' products (*see, e.g.*, Dkt 1-5 [KCT Product Roadmap Presentation] at 8-24), has set up its United States sales and marketing subsidiary (GCLI) ten miles from Skyworks' corporate headquarters, and has targeted Skyworks' current and former customers—such as D-Link and Ruijie—including by directly comparing its products to Skyworks' products "in terms of linearity, efficiency, noise figure, and other performance metrics" (KXComTech, *IPO Press Release*, [https://perma.cc/6D7X-VUU6]).  KCT has engaged in this conduct despite knowledge of Skyworks' patent portfolio generally and the Asserted Patents in particular.  On information and belief, the KCT wireless FEMs used in D-Link's and Ruijie's products copy Skyworks' technology, including the technology covered by the '200 patent.

### C.     The D-Link Defendants

15.     D-Link Corporation is a corporation organized under the laws of Taiwan with a principal place of business at 4F 289 Sinhu 3rd Road, Neihu District, Taipei, 114 Taiwan.

16.     D-Link Systems Inc. is a corporation organized under California law with a principal place of business at 14420 Myford Road, Suite 100, Irvine, CA 92606.  (Ex. 1 [D-Link Systems Inc. California Corporation Registration]).  D-Link Systems Inc. is a wholly owned subsidiary of D-Link Corporation.  (D-Link Corporation, *2023 Annual Report*, [https://perma.cc/9QWC-HUSZ] at 148.)

17.     Originally established in Taiwan in 1986 as Datex System, Inc. to market network adapters, D-Link is now a multinational designer, manufacturer, and seller of products ranging from surveillance cameras to whole home Wi-Fi systems. D-Link sells its products worldwide, including in the U.S. where it made more than $37 million in sales in 2023 alone.  (*Id.* at 167.)  On information and belief, these sales are made both directly and through third-party distributors.

18.     D-Link's Wi-Fi routers and other products utilize wireless FEMs.  D-Link has historically purchased these wireless FEMs from Skyworks, but has recently started shipping products that contain KCT wireless FEMs that KCT advertises as pin-for-pin compatible with Skyworks' products.  (*See, e.g.*, Dkt. 1-5 [KCT Product Roadmap Presentation] at 8-24.)  On information and belief, the KCT wireless FEMs used in D-Link's products directly copy Skyworks' technology, including the technology covered by the '200 patent.

### D.     Ruijie

19.     Ruijie is a corporation organized under the laws of China with a principal place of business at Building 19, Juyuanzhou Industrial Park, No. 618 Jinshan Road, Cangshan District, Fuzhou, Fujian, China.

20.     Founded in 2003, Ruijie is a network infrastructure and solution provider that produces and sells network equipment, network security products, and

cloud desktop solutions, among other products.  Ruijie has stated publicly that it "serves energy and electric power, government, entertainment and hospitality, telecommunications, healthcare, transportations, finance, Internet, exhibition, education, and enterprise industries." (Yahoo! Finance, *Ruijie Networks Co., Ltd. (301165.SZ)*, [https://perma.cc/B7J4-YH8V].)  Ruijie reported sales of more than 11.25 billion Chinese Yuan (approximately $1.55 billion) in 2022 alone.  (Wall Street Journal, *Ruijie Networks Co. Ltd. A*, [https://perma.cc/5TV4-VRTN].)  On information and belief, these sales are made both directly and through third-party distributors.

21.    Ruijie's Wi-Fi routers and other products utilize wireless FEMs.  Ruijie has historically purchased these wireless FEMs from Skyworks, but has recently started shipping products that contain KCT wireless FEMs that KCT advertises as pin-for-pin compatible with Skyworks' products.  (*See, e.g.*, Dkt. 1-5 [KCT Product Roadmap Presentation] at 8-24.) On information and belief, the KCT wireless FEMs used in Ruijie's products directly copy Skyworks' technology, including the technology covered by the '200 patent.

## JURISDICTION AND VENUE

22.    This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.

23.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

### A.    The KCT Defendants

#### i)    *KXComTech*

24.    KXComTech is subject to this Court's specific and general personal jurisdiction due at least to its substantial business in this State and District, including by regularly doing or soliciting business, engaging in other persistent conduct targeting residents of California and this District, and/or deriving substantial revenue

from infringing goods offered for sale, sold, and imported vicariously through and/or in concert with its related entities, alter egos, intermediaries, agents, distributors, partners, subsidiaries, clients, customers, affiliates, and/or consumers.

25.    For instance, GCLI is responsible for selling KXComTech's products to customers in the United States and for developing KXComTech's business in U.S. markets.  GCLI is 100% owned by KXComTech (Wi-Fi Now, *David L. Recker*, [https://perma.cc/AJT7-MDWU] (identifying GCLI as a "[w]holly owned US subsidiary of KXcomtech")), and KXComTech's chairman, Dr. Ping Peng, is GCLI's corporate president, treasurer, and sole director (Dkt. 1-6 [GCLI Nevada Corporate Registration]).  GCLI is registered to do business in California and maintains its principal place of business in this District located at 14151 Newport Ave., Suite 204, Tustin.  (Dkt. 1-4 [GCLI California Corporation Registration].)

26.    On information and belief, KXComTech also directs and authorizes the sale and distribution of infringing products in California, including in this District. For instance, KXComTech's website lists an individual employed by GCLI as its General Representative of North America for sales.  (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ].)    Further, KXComTech's website lists Disman Bakner as its United States distributor for the California market.  (KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].)    On information and belief, KXComTech directs and authorizes both GCLI and Disman Bakner to distribute infringing products in California.

27.    Venue is proper in this District as to KXComTech because it is a foreign corporation organized under the laws of China, with a principal place of business in Shanghai, China.  Because KXComTech is not a resident of the United States, it may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

ii)    *GLCI*

28.    This Court has personal jurisdiction over GCLI because it is domiciled in California and lists its principal place of business in California.  (Dkt. 1-4 [GCLI California Corporation Registration].)

29.    This Court also has personal jurisdiction over GCLI because it regularly transacts business in this District by, among other things, offering infringing products to customers, business affiliates, and partners located in the District.  For instance, an individual employed by GCLI is listed on KXComTech's website as KXComTech's General Representative of North America for sales.  (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ].)

30.    Venue is proper in this District as to GCLI pursuant to at least 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), 1391(c)(2), 1391(d), and 1400(b) because GCLI is subject to personal jurisdiction in this District, has a regular and established place of business in this District, and has committed acts of infringement in this District.  For example, GCLI lists its principal place of business as 14151 Newport Ave., Suite 204, Tustin, CA 92780, which is located in this District less than five miles from the Ronald Reagan Federal Building and United States Courthouse.  (Dkt. 1-4 [GCLI California Corporation Registration].)

**B.    The D-Link Defendants**

i)    *D-Link Corporation*

31.    D-Link Corporation is subject to this Court's specific and general personal jurisdiction due at least to its substantial business in this State and District, including by regularly doing or soliciting business, engaging in other persistent conduct targeting residents of California and this District, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported vicariously through and/or in concert with its related entities, alter egos, intermediaries, agents, distributors, partners, subsidiaries, clients, customers, affiliates, and/or consumers.

32.    For instance, D-Link Systems, Inc. is responsible for selling D-Link Corporation's products in the United States.  D-Link Systems, Inc. is 100% owned

by D-Link Corporation. (D-Link Corporation, *2023 Annual Report*, [https://perma.cc/9QWC-HUSZ] at 148.) D-Link Systems, Inc. is registered to do business in California and has a corporate office in this District located at 14420 Myford Road, #100, Irvine, CA 92606. (Ex. 1 [D-Link Systems, Inc. California Corporation Registration].)

33. Venue is proper in this District as to D-Link Corporation because it is a foreign corporation organized under the laws of Taiwan, with a principal place of business in Taiwan. Since D-Link Corporation is not a resident of the United States it may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

ii)     *D-Link Systems, Inc.*

34. This Court has personal jurisdiction over D-Link Systems, Inc. because it is domiciled in California and lists its principal place of business in California. (Ex. 1 [D-Link Systems, Inc. California Corporation Registration].)

35. This Court also has personal jurisdiction over D-Link Systems, Inc. because it regularly transacts business in this District by, among other things, offering infringing products to customers, business affiliates, and partners located in the District.

36. Venue is proper in this District as to D-Link Systems, Inc. pursuant to at least 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), 1391(c)(2), 1391(d), and 1400(b) because D-Link Systems, Inc. is subject to personal jurisdiction in this District, has a regular and established place of business in this District, and has committed acts of infringement in this District.

37. For example, D-Link Systems, Inc. lists its principal place of business as 14420 Myford Road, #100, Irvine, CA 92606. (Ex. 1 [D-Link Systems, Inc. California Corporation Registration].) Further, since 2019, D-Link Systems, Inc. has received 350 shipments of products—including, on information and belief, products that infringe the '200 patent—at the Port of Los Angeles, which is located in this District. (ImportInfo, *D-Link Systems, Inc.*, [https://perma.cc/WDL3-B72B].)

1    In fact, since 2019, D-Link Systems, Inc. has received more shipments at the Port of

2    Los Angeles than any other port in the United States.  (*Id.*)

3        **C.    Ruijie**

4        38.    Ruijie is subject to this Court's specific and general personal

5    jurisdiction due at least to its substantial business in this State and District, including

6    by regularly doing or soliciting business, engaging in other persistent conduct

7    targeting residents of California and this District, and/or deriving substantial revenue

8    from infringing goods offered for sale, sold, and imported vicariously through and/or

9    in concert with its related entities, alter egos, intermediaries, agents, distributors,

10   partners, subsidiaries, clients, customers, affiliates, and/or consumers.

11       39.    This Court has personal jurisdiction over Ruijie because it sells

12   infringing products in the District.  For instance, Ruijie purposefully engages in

13   selling infringing products in California, including in this District, via Amazon.com.

14   (Ex. 2 [Amazon Ruijie Listing]; Ex. 3 [Amazon Purchase Receipt].)  Skyworks'

15   cause of action arises directly from Ruijie's business contacts and other activities in

16   the State of California and the Central District of California.

17       40.    On information and belief, Ruijie has derived revenues from its

18   infringing acts occurring within the State of California and within the District.

19       41.    Venue is proper in this District as to Ruijie because it is a foreign

20   corporation organized under the laws of China, with a principal place of business in

21   China.  Since Ruijie is not a resident of the United States it may be sued in any

22   judicial district pursuant to 28 U.S.C. § 1391(c)(3).

23                          **FACTUAL BACKGROUND**

24       **A.    Technology Background**

25       42.    The '200 patent relates to an innovative technology for improving the

26   performance and design of FEMs, including wireless FEMs.

27

28

43.    Skyworks has been at the forefront of advancing wireless connectivity technologies, and its commitment to innovation can be seen across all of its business segments, including its wireless FEM product offerings.

44.    Wireless FEMs are integrated circuits contained in wireless routers (and many other devices) that enable the wireless router to facilitate wireless communication with a user device (*e.g.*, a computer or a cell phone) so that the user device can communicate other systems, such as using the internet.  As noted above, wireless FEMs are typically located between the wireless router's antenna and its transceiver and are generally comprised of semiconductor components, including but not limited to, power amplifiers, low noise amplifiers, and switches.  They perform the critical task of conditioning wireless signals that are transmitted and received by a device.

45.    When a user device accesses the internet, for example, it sends signals requesting data and receives the data in response.  When a user device uses Wi-Fi to request access to the internet, it sends a wireless signal to the wireless router.  The wireless router processes the signal and passes it to the internet.  When the internet responds, the wireless router processes the response, determines which user device to send the response to (if there are multiple user devices connected to the wireless router), and sends the wirelessly sends the response to the appropriate user device.

46.    Proper wireless communication between a user device and a wireless router requires transmission of strong and clear wireless signals.  However, myriad external factors can weaken or warp the signal during transmission.  As a result, signals received by a wireless router often need to be adjusted so that they can reach their intended destination in a discernable fashion.  This signal adjustment is typically performed by the wireless router's FEM.

47.    For example, during the transmission of a wireless signal from the wireless router to a user device, outside noise sources may disrupt the transmitted signal.  This disruption is commonly referred to as "interference" and it can decrease

the strength and quality of the signal sent from the wireless router to the user device. To prevent this, the router sends the signal from its transceiver to the wireless FEM for adjustment for wireless transmission. The wireless FEM uses power amplifiers to strengthen the signal without distorting it. This reduces the impact of any interference the signal might experience during transmission so that a strong and clear signal can be received by the user device.

48.    Further, when the wireless router receives a signal from the user device, factors such as the distance between the wireless router and the user device can reduce the signal strength. To account for this, the wireless router uses the wireless FEM for adjustment of the received wireless signal. The wireless FEM can use its low-noise amplifier to both amplify the strength of the signal and isolate the signal from interference. This ensures that the signal received by the wireless router is strong enough for the wireless router to properly process and route.

49.    The '200 patent reflects Skyworks' many years of dedication to and investment in research and development related to wireless FEMs. Designing wireless FEM chips that can keep pace with new wireless networking capabilities has posed significant challenges for FEM producers—especially given the increasing need for smaller and more efficient chips. The '200 patent addresses these challenges by enhancing wireless FEM performance in a power-efficient manner through use of improved circuitry associated with power amplifiers and innovative RF switch systems.

1

**B.**    **The '200 Patent**[3]

2    50.    As set forth below, KCT, D-Link and Ruijie have been and are still

3 infringing the '200 patent by making, using, offering for sale, selling, or importing

4 wireless FEMs, and/or products that contain wireless FEMs, that practice the '200

5 patent, or by contributing to infringement or inducing others to infringe. Each

6 Defendant's acts of infringement have occurred within this District and elsewhere

7 throughout the United States.

8    51.    The '200 patent, entitled "Module integration integrated circuits," was

9 assigned to SiGe on June 2, 2004 (Dkt. 1-7 [Assignment]), was duly and legally

10 issued on August 5, 2008, and has been in full force and effect since its issuance. A

11 true and correct copy of the '200 patent has been filed on the case docket at Dkt. 1-

12 8.

13    52.    Skyworks acquired SiGe on May 17, 2011 and, on August 1, 2011,

14 SiGe executed a patent license agreement granting an exclusive license to the '200

15 patent (among others) to Skyworks Global. On June 23, 2016, SiGe formally

16 changed its corporate name to plaintiff Skyworks Solutions Canada, Inc. (Dkt. 1-1

17 [Certificate of Amendment].) As a result, Skyworks Global and Skyworks Canada

18 own all substantial rights to the '200 patent, including the right to enforce the patent

19 and seek all legal and equitable remedies for infringement thereof.

20    53.    The '200 patent relates generally to systems and methods of designing

21 RF front-end circuits in RF front-end modules.

22

23

24    ————————————

25 [3] All non-technical descriptions of the '200 patent included in this Complaint are presented to give a general background to the patent. Statements made in connection

26 with these non-technical descriptions are not intended nor should they be used for purposes of patent claim construction. Skyworks presents these statements subject

27 to and without waiver of its right to argue that claim terms should be construed in a particular way under claim interpretation jurisprudence and the relevant evidence.

28

54.    The '200 patent explains that prior art RF modules incorporated many separate semiconductor dies to accommodate the circuits of an RF front-end module. (Dkt. 1-8 ['200 patent] at 1:42-55.)  According to the '200 patent, having many semiconductor dies presents drawbacks such as "progressively larger and more expensive modules." (*Id*. at 4:14-27).  However, reducing the number of dies by integrating more components onto fewer dies can lead to undesirable increases in crosstalk and thus output signal noise. (*Id*. at 7:14-20.)  As the '200 patent explains, there was therefore a need for a more "compact" RF module (*id*. at 2:29-30) having "high levels of integration" (*id*. at 1:63-66) while at the same time avoiding undesirable increases in crosstalk and thus unwanted output signal noise (*id*. at 7:14-20, Figs. 2, 4, 5).

55.    The '200 patent addresses this need, for example, through an RF module with a first integrated circuit semiconductor die having a first portion of a first signal conditioning circuit integrated within the first integrated circuit die and disposed along a first signal path and a second integrated circuit semiconductor die containing a second signal conditioning circuit on a second signal conditioning path. (*Id*. at 7:32-50; Fig. 5).  By largely separating the two signal paths onto different dies, the '200 patent explains that the RF module can be made more compact—thereby "reduc[ing] cost, reduc[ing] assembly time, and increas[ing] yield and module longevity" (*id*. at 1:63-66))—without causing an undesirable increase in crosstalk, and thus reducing the potential for unwanted output signal noise (*id*. at 7:14-20, Fig. 5).

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,409,200

56.    Skyworks re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint, as if fully set forth herein.

57.    The '200 patent is valid and enforceable under the United States Patent Laws.

### A.    <u>Infringement by the KCT Defendants</u>

58.    KCT has been and is still infringing, directly or indirectly, literally or under the doctrine of equivalents, the '200 patent by making, using, offering for sale, selling, or importing infringing wireless FEMs, including, but not limited to, KCT's KCT8547HE, KCT8539S, KCT8576HE, and KCT8239S FEM products (the "Accused KCT Products").[4]

59.    The Accused KCT Products infringe at least claims 1, 2, 6, 10-12, 15, 18, 19, 20, and 23-25 of the '200 patent, including because the Accused KCT Products are manufactured using a process that infringes the '200 patent and because the Accused KCT Products, on information and belief, are neither materially changed by a subsequent process nor rendered trivial and nonessential components of another product.

60.    For instance, the Accused KCT Products infringe independent claims 1 and 18 of the '200 patent for at least the reasons described in Skyworks' exemplary infringement charts set forth as Exhibit 4 (KCT8547HE infringement chart), Exhibit 5 (KCT8539S infringement chart), and those filed on the case docket at Dkt. 1-11 (KCT8576HE infringement chart) and Dkt. 1-12 (KCT8239S infringement chart).

61.    With respect to claim 2, the Accused KCT Products further contain a second signal conditioning circuit on the low noise amplifier die including a plurality of circuitry including, but not limited to, a low noise amplifier and switch circuits through which a signal passes to make a received signal suitable for further processing.  The first portion of the second signal conditioning circuit includes a switch that can be appropriately set to allow reception of an incoming signal. The second portion of the second signal conditioning circuit has a low noise amplifier and low noise amplifier bypass path.  The signal path of the second signal

---

[4] Skyworks' infringement allegations regarding the '200 patent extend without limitation to all KCT wireless FEMs embodying an infringing RF Module, including KCT's Wi-Fi 6, 6E, and 7 FEMs.

conditioning circuit is different from the signal path of the first signal conditioning circuit. Thus, the Accused KCT Products infringe claim 2 of the '200 patent.

62.    With respect to claim 6, the Accused KCT Products further contain a first signal conditioning circuit that includes a plurality of circuitry including, but not limited to, power amplifier circuitry and switch circuitry through which a signal passes to make it suitable for transmission. The first portion of the first signal conditioning circuit includes power amplifier circuitry for amplifying an input signal before transmission. Thus, the Accused KCT Products infringe claim 6 of the '200 patent.

63.    With respect to claim 10, the Accused KCT Products further contain a power amplifier die manufactured by a process that is different from the process used to manufacture the low noise amplifier die such that the circuitry associated with signal conditioning on the low noise amplifier die would not be suitable for manufacturing and integration onto the power amplifier die. Thus, the Accused KCT Products infringe claim 10 of the '200 patent.

64.    With respect to claim 11, the Accused KCT Products further contain a low noise amplifier die that is manufactured using a different set of semiconductor processing steps compared to the power amplifier die. Thus, the Accused KCT Products infringe claim 11 of the '200 patent.

65.    With respect to claim 12, the Accused KCT Products further contain a power amplifier die that is made from a semiconductor wafer comprising GaAs. Thus, the Accused KCT Products infringe claim 12 of the '200 patent.

66.    With respect to claim 15, the Accused KCT Products further contain a first signal conditioning circuit that includes a plurality of circuitry including, but not limited to, power amplifier circuitry and switch circuitry through which a signal passes to make it suitable for transmission. The second portion of the first signal conditioning circuit has at least one of a capacitor and an inductor. Thus, the Accused KCT Products infringe claim 15 of the '200 patent.

67.     With respect to claim 19, the Accused KCT Products further contain a first portion of a first signal path on the power amplifier die and a second portion of the first signal path on the low noise amplifier die.  The signal path is located between an input to the power amplifier die and an output of the low noise amplifier die.  Thus, the Accused KCT Products infringe claim 19 of the '200 patent.

68.     With respect to claim 20, the Accused KCT Products further contain a second signal path located on the low noise amplifier die that is different from the second portion of the first signal path which is also located on the low noise amplifier die, providing approximate RF isolation.  The circuitry along the second signal path extends from the antenna node to the receive node and includes switch circuitry to allow reception of an incoming signal as well as a low noise amplifier path and low noise amplifier bypass path.  The circuitry along the second portion of the first signal path extends from the input to the low noise amplifier die to the antenna node and includes switch circuitry that allows the signal to be transmitted through the antenna when the switch circuit is appropriately set.  Thus, the Accused KCT Products infringe claim 20 of the '200 patent.

69.     With respect to claim 23, the Accused KCT Products further contain a power amplifier die manufactured by a semiconductor process that is different from the semiconductor process used to manufacture the low noise amplifier die such that the circuitry associated with second portion of the first signal conditioning on the low noise amplifier die would not facilitate its implementation in the power amplifier die.  Thus, the Accused KCT Products infringe claim 23 of the '200 patent.

70.     With respect to claim 24, the Accused KCT Products each implement the second portion of the first signal conditioning circuit in the low noise amplifier die for improved performance over implementing the second portion of the first signal conditioning circuit in the power amplifier die.  The low noise amplifier die includes a second portion of a first signal conditioning circuit having switch circuitry that allows the signal to be transmitted through the antenna when the switch circuit

is appropriately set. Implementing this signal conditioning circuit in the low noise amplifier die yields better performance than implementing it in the power amplifier die due to the differences in the semiconductor processing used to manufacture the two dies. Thus, the Accused KCT Products infringe claim 24 of the '200 patent.

71.     With respect to claim 25, the Accused KCT Products further contain a first signal conditioning circuit partitioned into a first portion and a second portion. The first portion includes power amplifier circuitry for amplifying an input signal before transmission, and the second portion includes switch circuitry that allows the signal to be transmitted through the antenna when the switch circuit is appropriately set. Thus, the Accused KCT Products infringe claim 25 of the '200 patent.

72.     KCT has had knowledge of the '200 patent at least since March 7, 2023, when Skyworks sent a letter to KCT's President informing KCT that its 2.4 GHz and 5 GHz wireless FEMs infringed the claims of certain Skyworks patents, including (but not limited to) the '200 patent. (Dkt. 1-13 [2023 Notice Letter] at 1-2.) Skyworks met with KCT and gave a presentation outlining KCT's infringement. Skyworks additionally sent a letter to KCT on April 23, 2024, providing further notice of KCT's infringement of the '200 patent. (Dkt. 1-14 [2024 KCT Notice Letter].) Moreover, on May 8, 2024, KCT issued a press release confirming knowledge of Skyworks's infringement allegations based on the '200 patent (among other patents). (Ex. 7 [Machine Translated KCT Press Release].) Despite receiving notice of its infringement, KCT has continued to infringe Skyworks' patented technology, including the technology claimed in the '200 patent, and made no effort to avoid infringement.

73.     KCT actively, knowingly, and intentionally has induced and continues to induce infringement of the '200 patent by, for example, controlling the design and manufacture of, offering for sale, selling, supplying, and otherwise providing instruction and guidance regarding the Accused KCT Products, with the knowledge and specific intent to encourage and facilitate acts of direct infringement with respect

to such products, including by resellers, retailers, end product manufacturers, and end users of the Accused KCT Products, both inside and outside the United States. For example, KCT advertises the Accused KCT Products as being pin-to-pin replacements for Skyworks' products.   For instance, KCT's product roadmap presentation published in the second quarter of 2023 indicated that the accused KCT8576HE product is pin-to-pin compatible with Skyworks' SKY85746-11 product.  (Dkt. 1-5 [KCT Product Roadmap Presentation] at 13.)  On information and belief, KCT sells and distributes infringing products to customers in the United States both directly and through third-party distributors like Disman Bakner. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ];   KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].)  KCT also sells the Accused KCT Products to the D-Link and Ruijie Defendants with knowledge that the Accused KCT Products will be incorporated into wireless routers sold by D-Link and Ruijie in the United States.  KCT's distributors, customers, and end users directly infringe the '200 patent by, for example, making, using, offering to sell, and selling within the United States, and/or importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

74.    KCT also contributes to infringement of the '200 patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Accused KCT Products, which are not suitable for substantial non-infringing use and which embody a material part of the invention described in the '200 patent.  These Accused KCT Products are known by KCT to be especially made or especially adapted for use in the infringement of the '200 patent.  Specifically, on information and belief, KCT sells the Accused KCT Products to resellers, retailers, and end product manufacturers with knowledge that such entities perform acts of direct infringement with the Accused KCT Products. KCT sells and distributes infringing products to customers in the United States both

directly and through third-party distributors like Disman Bakner. (KXComTech, Sales Support, [https://perma.cc/2PTT-F9XZ]; KXComTech, Distributors, [https://perma.cc/FYC6-XH8A].) KCT's distributors, customers, and end users directly infringe the '200 patent by, for example, making, using, offering to sell, selling within the United States, and/or importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

75.    As a result of KCT's infringement of the '200 patent, Skyworks has been damaged. Skyworks is entitled to recover for damages sustained as a result of KCT's wrongful acts in an amount subject to proof at trial.

76.    In addition, KCT's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

77.    On information and belief, KCT's infringement of the '200 patent has been and continues to be willful. As noted above, KCT has had knowledge of the '200 patent and its infringement of the '200 patent since at least March 7, 2023. KCT has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Skyworks' patent rights. Thus, KCT's infringing actions have been and continue to be consciously willful.

78.    Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because of KCT's copying of Skyworks' technology in the Accused KCT Products—which warrants an award of attorney's fees to Skyworks pursuant to 35 U.S.C. § 285.

## B.    Infringement by the D-Link Defendants

79.    D-Link has been and is still infringing, directly or indirectly, literally or under the doctrine of equivalents, the '200 patent by making, using, offering for sale, selling, or importing wireless routers that include one or more of the Accused KCT Products that practice the '200 patent, including but not limited to the D-Link AX1800 wireless router.

80.    The D-Link AX1800 wireless router infringes the '200 patent because it contains a KCT8547HE Wi-Fi FEM.  For the reasons described above (*supra* ¶¶ 59-71), the KCT8547HE Wi-Fi FEM infringes at least claims 1, 2, 6, 10-12, 15, 18, 19, 20, and 23-25 of the '200 patent.

81.    Exemplary infringement charts showing infringement of independent claims 1 and 18 of the '200 patent by the D-Link AX1800 wireless router are set forth as Exhibit 4.

82.    D-Link actively, knowingly, and intentionally induces, and continues to actively, knowingly, and intentionally induce infringement of the '200 patent by its customers and end users.  D-Link has known of the '200 patent and Skyworks' infringement allegations since at least April 23, 2024, when Skyworks sent a letter to D-Link providing notice that D-Link's AX1800 wireless router infringed enumerated claims of the '200 patent through its use of Accused KCT Products.  (Ex. 8 [2024 D-Link Notice Letter].)  Despite notice, D-Link nevertheless actively induces its customers, including end-users of the D-Link AX1800, to directly infringe the '200 patent by instructing, directing, and encouraging these end-users to purchase and use the D-Link AX1800 wireless router and the Accused KCT Products it contains.  On information and belief, D-Link instructs, directs, and encourages its customers to infringe by advertising the AX1800 wireless router (D-Link, *AX-1800*, [https://perma.cc/6JQD-5DVR] (contending that the AX1800 wireless router provides "faster and more reliable Wi-Fi speeds" on both 2.4Ghz and 5GHz Wi-Fi bands in advertising materials), and providing at least installation/technical manuals, troubleshooting guides, and/or product tutorials.  For instance, the D-Link AX1800's user manual lists a series of troubleshooting strategies that the end-user can perform to resolve connectivity issues, including "unplug[ing] the power to the router for 10 seconds and plug[ing] back in" and then connecting the router to the desired computer device.  (D-Link, *D-Link R18 User Manual*                                                                                                                         ,

[https://support.dlink.com/resource/products/R18/REVA/R18_A1_Manual_v1.00( WW).pdf] at 141-42.)  D-Link customers directly infringe because following the steps D-Link instructs them to perform, including starting the D-Link router and connecting it to a user device like a computer, results in an infringing use of the Accused KCT Product contained within that router.

83.    D-Link also contributes to infringement of the '200 patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the D-Link AX1800 wireless router, which is not suitable for a substantial non-infringing use and which embodies a material part of the invention described in the '200 patent.  The D-Link AX1800 wireless router is known by D-Link to contain the KCT8547HE Wi-Fi FEM, which is especially made or especially adapted for use in the infringement of the '200 patent.  Specifically, on information and belief, D-Link sells the D-Link AX1800 wireless router to resellers, retailers, and end users with knowledge that the D-Link AX1800 wireless router contains the KCT8547HE, which is used for infringement. D-Link customers directly infringe the '200 patent by, for example, without authority or license using the D-Link AX1800 wireless router and the Accused KCT Product it contains.

84.    As a result of D-Link's infringement of the '200 patent, Skyworks has been damaged.  Skyworks is entitled to recover for damages sustained as a result of D-Link's wrongful acts in an amount subject to proof at trial.

85.    In addition, D-Link's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

86.    On information and belief, D-Link's infringement of the '200 patent has been and continues to be willful.  As noted above, D-Link has had knowledge of the '200 patent and its infringement of the '200 patent since at least April 23, 2024. D-Link has deliberately continued to infringe in a wanton, malicious, and egregious

manner, with reckless disregard for Skyworks' patent rights. Thus, D-Link's infringing actions have been and continue to be consciously willful.

87. Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because of D-Link's use of the KCT8547HE wireless FEM, which on information and belief copies Skyworks' technology, in the D-Link AX1800 wireless router—that warrants an award of attorney's fees to Skyworks pursuant to 35 U.S.C. § 285.

### C. Infringement by Ruijie

88. Ruijie has been and is still infringing, directly or indirectly, literally or under the doctrine of equivalents, the '200 patent by making, using, offering for sale, selling, or importing wireless routers that include one or more of the Accused KCT Products that practice the '200 patent, including but not limited to the Ruijie Reyee E5 AX3200 wireless router.

89. The Ruijie Reyee E5 AX3200 wireless router infringes the '200 patent because it contains a KCT8539S wireless FEM. For the reasons described above (*supra* ¶¶ 59-71), the KCT8539S wireless FEM infringes at least claims 1, 2, 6, 10-12, 15, 18, 19, 20, and 23-25 of the '200 patent.

90. Exemplary infringement charts showing infringement of independent claims 1 and 18 of the '200 patent by the Ruijie Reyee E5 AX3200 wireless router are set forth as Exhibit 5.

91. Ruijie actively, knowingly, and intentionally induces, and continues to actively, knowingly, and intentionally induce infringement of the '200 patent by its customers and end users. Ruijie has known of the '200 patent and Skyworks' infringement allegations since at least April 23, 2024, when Skyworks sent a letter to Ruijie providing notice that Ruijie infringes enumerated claims of the '200 patent through its use of Accused KCT Products in its wireless routers. (Ex. 9 [2024 Ruijie Notice Letter].) Despite this notice, Ruijie's infringement has continued unabated. On July 11, 2024, for example, Skyworks purchased a Ruijie Reyee E5 AX3200

wireless router in the United States that, upon tear-down inspection, contained several of the accused KCT8539S wireless FEMs.  (Ex. 17 [Ruijie Product Purchase Receipt]; Ex. 10 [Ruijie Board Photo].)  Ruijie thus continues to actively induce customers and end-users of its wireless router products containing KCT FEMs to directly infringe the '101 patent, including for example by instructing, directing, and encouraging these customers and end-users to purchase and use Ruijie wireless routers and the Accused KCT Products they contain.  On information and belief, Ruijie instructs, directs, and encourages its customers to infringe by, for example, advertising the Reyee E5 AX3200 wireless router (Amazon, *Ruijie Reyee E5 AX3200*, [https://perma.cc/P8B8-NNP9] (contending that the Reyee E5 AX3200 contains 8 Wi-Fi FEMs, which allows the router to provide higher Wi-Fi speeds in advertising materials), and providing at least installation/technical manuals, troubleshooting guides, and/or product tutorials.  For instance, the Ruijie Reyee E5 AX3200 wireless router's user manual outlines certain steps to configure the router to connect with a user device, including powering on the router, selecting the router's internet connection on a user device, and connecting the device to the router.  (Ruijie, *Reyee E5 AX3200 User Guide*, [https://manuals.plus/reyee/rg-e5-mesh-smart-wifi-6-router-manual.pdf] at 3-4.)  Ruijie customers directly infringe because following the steps Ruijie instructs them to perform, including starting the Ruijie router and connecting it to a user device like a computer, results in an infringing use of the Accused KCT Product contained within that router.

92.    Ruijie also contributes to infringement of the '200 patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Ruijie Reyee E5 AX3200 wireless router, which is not suitable for a substantial non-infringing use and which embodies a material part of the invention described in the '200 patent.  The Ruijie Reyee E5 AX3200 wireless router is known by Ruijie to contain the KCT8539S Wi-Fi FEM, which is especially made or especially adapted for use in the infringement of the

'200 patent. Specifically, on information and belief, Ruijie sells the Ruijie Reyee E5 AX3200 wireless router to resellers, retailers, and end users with knowledge that the Ruijie Reyee E5 AX3200 wireless router contains the KCT8539S, which is used for infringement. Ruijie's customers directly infringe the '200 patent by, for example, without authority or license using the Reyee E5 AX3200 wireless router and the Accused KCT Product it contains.

93. As a result of Ruijie's infringement of the '200 patent, Skyworks has been damaged. Skyworks is entitled to recover for damages sustained as a result of Ruijie's wrongful acts in an amount subject to proof at trial.

94. In addition, Ruijie's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

95. On information and belief, Ruijie's infringement of the '200 patent has been and continues to be willful. As noted above, Ruijie has had knowledge of the '200 patent and its infringement of the '200 patent since at least April 23, 2024. Ruijie has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Skyworks' patent rights. Thus, Ruijie's infringing actions have been and continue to be consciously willful.

96. Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because of Ruijie's use of the KCT8539S wireless FEM, which on information and belief copies Skyworks' technology, in the Ruijie Reyee E5 AX3200 wireless router — that warrants an award of attorney's fees to Skyworks pursuant to 35 U.S.C. § 285

**PRAYER FOR RELIEF**

97. WHEREFORE, Skyworks respectfully requests that this Court enter judgment in its favor as follows and award Skyworks the following relief:

a) A judgment that each of KCT, D-Link, and Ruijie have infringed at least one or more claims of the '200 patent, directly and/or indirectly, literally and/or under the doctrine of equivalents;

b) An award of damages sufficient to compensate Skyworks for each of KCT's, D-Link's, and Ruijie's infringement under 35 U.S.C. § 284;

c) An adjudication that each of KCT's, D-Link's, and Ruijie's infringement has been willful and deliberate, and an award to Skyworks of treble damages and pre-judgment interest under 35 U.S.C. § 284;

d) An adjudication that this case is exceptional under 35 U.S.C. § 285, and an award to Skyworks of its reasonable attorneys' fees;

e) An award to Skyworks of its costs and expenses in this action;

f) A permanent injunction restraining and enjoining each of KCT, D-Link, and Ruijie, and their officers, directors, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated or related companies, attorneys, and all others in active concert or participation with any of the foregoing, from directly or indirectly infringing the '200 patent;

g) Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38-1 of this Court, Skyworks hereby demands a trial by jury as to all issues so triable.

1    Dated: July 17, 2024            Respectfully Submitted,

2

3                                    **WILMER CUTLER PICKERING
                                       HALE AND DORR LLP**
4

5                                    By: */s/  James M. Dowd*

6                                    James M. Dowd (SBN 211280)
                                     *james.dowd@wilmerhale.com*
7                                    Derek A. Gosma (SBN 274515)
                                     *derek.gosma@wilmerhale.com*
8                                    **WILMER CUTLER PICKERING
                                       HALE AND DORR LLP**
9                                    350 South Grand Avenue, Suite 2400
                                     Los Angeles, CA 90071
10                                   Tel: +1 213 443 5300

11                                   Joseph F. Haag (SBN 248749)
                                     *joseph.haag@wilmerhale.com*
12                                   **WILMER CUTLER PICKERING
                                       HALE AND DORR LLP**
13                                   2600 El Camino Real, Suite 400
                                     Palo Alto, CA 94306
14                                   Tel: +1 650 858 6000

15                                   Kate Saxton (*Admitted Pro Hac Vice*)
                                     *Kate.Saxton@wilmerhale.com*
16                                   **WILMER CUTLER PICKERING
                                       HALE AND DORR LLP**
17                                   60 State Street
                                     Boston, MA 02109
18                                   Tel: +1 617 526 6000

19                                   *Attorneys for Plaintiffs Skyworks Solutions
                                     Canada, Inc. and Skyworks Global Pte Ltd.*
20

21

22

23

24

25

26

27

28